**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| ROBERT REDMON, individually and on behalf of all others similarly situated,  )<br>  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>UNCLE JULIO'S OF ILLINOIS, INC.,  )<br>D/b/a UNCLE JULIO'S HACIENDA,  )<br>  )<br>Defendant.  ) | Judge Castillo<br><br>Magistrate Judge Nolan<br><br>07 C 02350 |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff Robert Redmon respectfully requests that this Court enter an order determining that this action alleging violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), be certified as a class action.

Plaintiff defines the class as "all consumers in Illinois to whom Uncle Julio's provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card."

Plaintiff further requests that counsel for plaintiff be appointed counsel for the class.

In support of this motion, plaintiff states as follows:

**NATURE OF THE CASE**

1. One provision of the December 2003 Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), codified as 15 U.S.C. §1681c(g), provides that:

> **No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

2. Section 1681c(g) is "not ambiguous." It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date."

*Pirian v. In-N-Out Burgers*, 2007 U.S. Dist. LEXIS 25384, *8 (C.D.Cal. Apr. 5, 2007).

  3. On April 20, 2007, plaintiff received from Uncle Julio's at its store located at 855 W. North Ave. Chicago, Illinois a computer-generated cash register receipt which displayed his card expiration date.

  4. Defendant has admitted through discovery that there are 55,823 customers at its store located at 855 W. North Ave., Chicago Illinois that received credit card receipts with the expiration date. (Exhibit 1). This number does not include the receipts provided at its Lombard store such that the class is larger then 55,823.

  5. Section 1681c(g) is an essential protection against identity theft, which according to the Federal Trade Commission victimized some 9 million persons and caused over $57 billion in harm in 2006 alone. "Stevens ID Theft Prevention Act Passes Commerce Committee," States News Service, Apr. 25, 2007 (Exhibit 2). One common *modus operandi* of identity thieves is to collect lost or discarded credit card receipts, or steal them, and use the information on them to engage in fraudulent transactions. Identity thieves who do this are known as "carders" and "dumpster divers." This is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," *Wall Street Journal*, Oct. 5, 2006, p. B1 (Exhibit 3).

  6. To curb identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number. The law gave merchants who accept credit and debit cards up to three years to comply. Full compliance was required by December 4, 2006.

  7. The need to "truncate" receipts was widely publicized among retailers. For example, the CEO of Visa USA, Carl Pascarella, explained on March 6, 2003 that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether.... The first phase

of this new policy goes into effect July 1, 2003 for all new terminals. . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003 (Exhibit 4).

8. The August 12, 2006 edition of "Rules for Visa Merchants" (Exhibit 5, p. 62), which is binding upon all merchants that accept Visa cards, similarly makes clear that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." VISA required complete compliance by merchants accepting Visa card by July 1, 2006, five months ahead of the statutory deadline. (*Id*.)

9. Most of defendant's business peers and competitors readily brought their receipt printing process into compliance.

10. A private remedy is provided by FCRA §1681n, which provides:

**§1681n. Civil liability for willful noncompliance**

**(a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of–**

(1)

**(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000...**

**CLASS CERTIFICATION REQUIREMENTS**

11. All requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been met.

12. Once again, defendant has admitted through discovery that there are 55,823 customers at its store located at 855 W. North Ave., Chicago Illinois that received credit card receipts with the expiration date. (Exhibit 1). This number does not include the receipts provided at its Lombard store such that the class is larger then 55,823.

13. There are questions of law and fact common to the class, which questions

predominate over any questions affecting only individual class members. The predominant common questions include the following:

      a.     Whether defendant had a practice of providing customers with a sales or transaction receipt on which defendant printed more than the last five digits of the credit card or debit card and/or the expiration date of the credit card or debit card;

      b.     Whether defendant thereby violated FACTA; and

      c.     Whether defendant's conduct was willful.

14.    Plaintiff's claims are typical of those of the class members. All are based on the same factual and legal theories.

15.    Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of class members and has retained experienced counsel. (Exhibit 6.)

16.    A class action is superior for the fair and efficient adjudication of the class members' claims, in that:

      a.     Consumers are unlikely to recognize the violation; and

      b.     Individual actions are uneconomical.

17.    Courts have recently held that actions alleging willful FCRA violations and seeking statutory damages are appropriate for class resolution. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Claffey v. River Oaks Hyundai, Inc.*, 238 F.R.D. 464, 468 (N.D.Ill. 2006); *Murray v. E*Trade Financial Corp.*, 240 F.R.D. 392 (N.D.Ill. 2006); *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D.Ill. 2006); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295 (N.D.Ill. 2005).

18.    In further support of this motion, plaintiff submits the accompanying memorandum of law.

WHEREFORE, plaintiff respectfully requests that this Court enter an order determining that this action may proceed as a class action and counsel for plaintiff be appointed class counsel.

                                            Respectfully submitted,

                                            <u>/s/Keith J. Keogh</u>

Keith J. Keogh
Alexander H. Burke
LAW OFFICES OF KEITH J. KEOGH, LTD.
227 W. Monroe Street, Suite 2000
Chicago, IL 60606
(312) 726-1092
(312) 726-1093 (fax)